William M. SKEEN and Jacqueline L. Skeen, Plaintiffs Below, Appellants,

v.

JO–ANN STORES, INC., House of Fabrics, Inc., Alan Rosskamm, Brian P. Carney, David E. Bolen, Jane A. Aggers, John W. Hermsen, R.N. Hankin, and H. Michael Hect, Defendants Below, Appellees.

No. 448, 1999.

Supreme Court of Delaware.

Submitted: Feb. 8, 2000.

Decided: May 3, 2000.

Ronald A. Brown, Jr., of Prickett, Jones & Elliott, Wilmington, Delaware, for Appellants.

Allen M. Terrell, Jr., (argued), Srinivas M. Raju, Michael D. Allen and Peter B. Ladig, of Richards, Layton & Finger, Wilmington, Delaware, and David J. Hooker, Keith L. Carson and Lisa R. Battaglia, of Thompson, Hine & Flory, LLP, Cleveland, Ohio, for Appellees.

Before VEASEY, Chief Justice, HARTNETT and BERGER, Justices.

BERGER, Justice.

In this appeal, we consider the adequacy of corporate disclosures to minority stockholders who were "cashed out" in a merger approved by the majority stockholder. The minority stockholders complain that they were not given enough financial information to decide whether to accept the merger consideration or seek appraisal. They say, in essence, that the settled law governing disclosure requirements for mergers does not apply, and that far more valuation data must be disclosed where, as here, the merger decision has been made and the only decision for the minority is whether to seek appraisal. We hold that there is no different standard for appraisal decisions. Directors must disclose all material facts within their control that a reasonable stockholder would consider important in deciding how to respond to the pending transaction. The Court of Chancery applied the proper standard and correctly concluded that the minority stockholders' disclosure claims were legally insufficient. Accordingly, we affirm.

I. Factual and Procedural Background

William M. Skeen and Jacqueline L. Skeen are former stockholders of House of Fabrics, Inc. (HF), a large retailer specializing in home sewing and crafts. On February 1, 1998, HF agreed to be acquired by Fabri–Centers of America, Inc. (FCA) in a two-step transaction—a tender offer for a majority (or all) of the HF shares at $4.25 per share followed by a merger at the same price. FCA acquired approximately 77% of HF's outstanding stock in the tender offer and immediately thereafter began making changes in HF's operations. FCA replaced five of HF's seven directors; FCA's Chairman and President took over as CEO of HF; the new HF Board announced the relocation of HF's headquarters; and FCA advanced funds to

pay off HF's outstanding indebtedness (approximately $43 million).

About three weeks after the tender offer closed, HF announced the second step merger. HF sent the minority stockholders a Notice of Special Meeting of Stockholders and an Information Statement, but not a proxy. HF explained that FCA owned enough shares of HF to approve the merger without the affirmative vote of any other stockholder. As a result, the minority stockholders were not asked to cast votes at the scheduled April 21, 1998 special meeting. Although no proxies were solicited, the Notice and Information Statement included the type of information normally found in a merger proxy statement, including a description of the companies, the background of the merger, merger terms, and relevant financial information. In addition, the Information Statement described the stockholders' appraisal rights and included a reprint of the appraisal statute, 8 *Del. C.* § 262, in the appendix.

The merger was approved and completed on April 21, and the Skeens accepted the merger consideration. Nine months later, they filed this action alleging that FCA and HF's directors breached their fiduciary duties by failing to disclose: (i) FCA's plan for HF and the extent that the plan had been implemented; (ii) the reason HF's board decided to sell the company; (iii) the range of HF's fair value, as determined by HF's investment banker; (iv) management's financial projections for 1998–2003; (v) financial reports for the first quarter of 1998; and (vi) the prices discussed with others for the sale or all or parts of HF.[1] Defendants moved to dismiss the complaint and the Skeens filed a

cross-motion for partial summary judgment. The Court of Chancery granted the motion to dismiss for failure to state a claim and denied the cross-motion.

## II. Discussion

■■■ Directors of Delaware corporations are fiduciaries who owe duties of due care, good faith and loyalty to the company and its stockholders.[2] The duty of disclosure is a specific formulation of those general duties that applies when the corporation is seeking stockholder action.[3] It requires that directors "disclose fully and fairly all material information within the board's control...."[4] Omitted facts are material "if there is a substantial likelihood that a reasonable stockholder would consider [them] important in deciding how to vote."[5] Stated another way, there must be "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable stockholder as having significantly altered the 'total mix' of information made available."[6]

These disclosure standards have been expressed in much the same language over the past 25 years. In the merger context, the particular stockholder action being solicited usually is a vote, and the oft-quoted language from our cases refers to information the stockholders would find important in deciding how to vote. But the vote, if there is one, is only part of what the stockholders must decide. Appraisal rights are available in many mergers, and stockholders who vote against the merger also must decide whether to exercise those rights.

■■■ In this case, the Court of Chancery occasionally referred to the information

---

1. The Complaint also alleges that HF violated §§ 251 and 262 by failing to mail the Notice and Information Statement on April 1, 1998. Appellants did not appeal from the dismissal of this claim, however, so it will not be addressed.

2. *Malone v. Brincat,* Del.Supr., 722 A.2d 5, 10 (1998).

3. *Id.*

4. *Stroud v. Grace,* Del.Supr., 606 A.2d 75, 84 (1992).

5. *Louden v. Archer–Daniels–Midland Co.,* Del. Supr., 700 A.2d 135, 142 (1997).

6. *Ibid.*

stockholders would need to decide how to vote, and Appellants use those references to argue that the trial court misapprehended the nature of the decision they faced. This argument not only lacks merit, it borders on the frivolous. The trial court reviewed the background to the merger; noted that FCA owned 77% of the HF stock; and specifically stated that the materiality determination, "requires an assessment of what a 'reasonable investor' would consider when making a decision to vote *or exercise appraisal rights.*" There is no doubt that the Court of Chancery understood the choices presented to HF's minority stockholders.

The real issue on appeal is whether the complaint adequately alleges any disclosure deficiencies. Appellants allege that the Information Statement failed to disclose FCA's plan for HF and a summary of the steps taken as of the merger date to implement that plan. They claim that this information would be important for them to decide how much value FCA had added to HF between the tender offer and the merger. Appellants acknowledge that certain interim events were disclosed (the change of directors and officers, plan to relocate headquarters, and debt refinancing), but they allege that those "bits and pieces" of the plan were inadequate.

█ To state a disclosure claim, appellants "must provide some basis for a court to infer that the alleged violations were material.... [They] must allege that facts are missing from the [information] statement, identify those facts, state why they meet the materiality standard and how the omission caused injury." [7] Appellants have not met this pleading requirement. They offer no undisclosed facts concerning the supposed "plan" that would have been important to the appraisal decision. Instead, they speculate that (i) there must have been some value added between the tender offer and the merger; (ii) the added value would be included in the determination of fair value under the ap-

praisal statute; and (iii) the added value would be significant enough to be important to reasonable stockholders deciding whether to pursue appraisal. Unsupported conclusions and speculation are not a substitute for facts.

[6] Appellants next complain that the Information Statement fails to disclose the real reason HF decided to sell the company—to satisfy the stockholders who obtained their stock in HF as a result of the company's 1994 bankruptcy. They acknowledge that the Information Statement lists ten reasons why the HF board recommended the merger, but allege that the disclosed reasons were not the "predominate reason." Again, the pleading fails to explain why this undisclosed reason for the merger (if true) would be important to the stockholders' decision. All HF stockholders, even those who obtained their stock in the bankruptcy, want to realize the best price available for their shares. Thus, the undisclosed reason would add little or nothing to the information provided.

█ Appellants also complain about several alleged deficiencies in the financial data that was disclosed. The Information Statement included a copy of the fairness opinion given by HF's investment banker, Donaldson, Lufkin & Jenrette (DLJ); the company's audited and unaudited financial statements through January 31, 1998; and HF's quarterly market prices and dividends through the year ended January 31, 1998. The complaint alleges that, in addition to this financial information, HF's directors should have disclosed: (1) a summary of "the methodologies used and ranges of values generated by DLJ" in reaching its fairness opinion; (2) management's projections of HF's anticipated performance from 1998—2003; (3) more current financial statements; and (4) the prices that HF discussed for the possible sale of some or all of the company during the year prior to the merger.

7. *Id.* at 140.

Appellants allege that this added financial data is material because it would help stockholders evaluate whether they should pursue an appraisal. They point out that the $4.25 per share merger price is 20% less than the company's book value. Since book value generally is a conservative value approximating liquidation value, they wonder how DLJ could conclude that the merger price was fair. If they understood the basis for DLJ's opinion, appellants say they would have a better idea of the price they might receive in an appraisal. Projections, more current financials and information about prices discussed with other possible acquirors, likewise, would help them predict their chances of success in a judicial determination of fair value.

The problem with appellants' argument is that it ignores settled law. Omitted facts are not material simply because they might be helpful. To be actionable, there must be a substantial likelihood that the undisclosed information would significantly alter the total mix of information already provided. The complaint alleges no facts suggesting that the undisclosed information is inconsistent with, or otherwise significantly differs from, the disclosed information. Appellants merely allege that the added information would be helpful in valuing the company.

Appellants are advocating a new disclosure standard in cases where appraisal is an option. They suggest that stockholders should be given all the financial data they would need if they were making an independent determination of fair value. Appellants offer no authority for their position and we see no reason to depart from our traditional standards. We agree that a stockholder deciding whether to seek appraisal should be given financial information about the company that will be material to that decision. In this case, however, the basic financial data were disclosed and appellants failed to allege any facts indicating that the omitted information was material. Accordingly, the complaint properly was dismissed for failure to state a claim.

### III. Conclusion

Based on the foregoing, the decision of the Court of Chancery granting appellees' motion to dismiss and denying appellants' cross-motion for partial summary judgment is affirmed.