Fabricant, Judith, J.
INTRODUCTION
This shareholder action, pled but not yet certified as a class action, challenges the proposed acquisition of Wainwright Bank by Eastern Bank. Presently before the Court is the plaintiffs motion for a preliminary injunction to enjoin a shareholder vote, nowscheduled for October 18, 2010.[1] After hearing, and review of all materials submitted, the motion will be denied.
BACKGROUND
In an unverified amended complaint, not supported by any affidavit, the plaintiff alleges that the defendant officers and directors of Wainwright, who collectively own 68 percent of its shares and control an additional 14 percent, have breached their fiduciary duties to its shareholders. The breaches alleged are two. First, the complaint alleges that the defendants have failed to maximize shareholder value by obtaining the best possible purchase price. Second, the complaint alleges that the proxy statement issued on September 10, for a vote then scheduled for September 29, failed to provide information material to the shareholders’ vote, particularly financial projections.[2] As to defendant Eastern Bank, the complaint alleges that it aided and abetted breaches by the Wainwright defendants.[3] The complaint seeks a declaration voiding the acquisition agreement, an injunction preventing its consummation, and attorneys fees.
An affidavit of Robert Glassman, co-chair of Wainwright’s board of directors, provides the following facts.[4] Wainwright is a Massachusetts trust company. Its twelve-member board of directors includes nine members who are not and have never been officers or employees. In late 2009, in the context of the challenging environment in the financial industry, Wainwright was approached by a private potential acquirer. Wainwright retained investment banker Sandler O’Neill & Partners L.P. to assist with its response.
Although the private potential acquirer did not proceed with an offer, after considering strategic alternatives, Wainwright made a decision to solicit proposals from other financial institutions. Through Sandler O’Neill, and with its advice, Wainwright held preliminary discussions with six potential bidders. Based on bids received, Wainwright narrowed the process to two, each of whom increased its bid. Eastern, a mutual bank, owned by its depositors, was the highest bidder, at $19.00 per share. Wainwright’s closing share price on June 28,2010, the day the merger was announced, was $9.62; the $19.00 price thus reflects a 98% premium. During the year prior to that date, Wainwright’s share price ranged from $5.70 to $10.20.
After negotiation, Wainwright and Eastern finalized a merger agreement at the $19.00 per share price. The agreement provided for Wainwright to be merged into Eastern, with Wainwright’s two co-chairs to become directors of Eastern. The agreement also provided for *510 Eastern to buy out Wainwright’s president’s employment contract, and then to employ him on an at will basis. Sandler O’Neill advised Wainwright’s board, in a written opinion letter dated June 28, 2010, that the proposed merger was fair to Wainwright’s shareholders from a financial perspective.[5] Wainwright’s board approved the merger on that date, after consideration of its terms, its effect on shareholders, employees, customers, and the community, and the Sandler O’Neill opinion. The merger was announced publicly on that date, and received press attention thereafter.
On September 10, 2010, Wainwright mailed a proxy statement to its shareholders, announcing a special shareholders’ meeting to be held on September 29, 2010. The proxy statement included the opinion letter from Sandler O’Neill, and set forth Sandler O’Neill’s analysis of value based on comparables.[6] It set forth the terms of the merger agreement, including those relating to employees and directors, and also notified shareholders of their statutory appraisal rights pursuant to G.L.c. 156B, §85. The proxy statement also disclosed the pendency of this action.
Wainwright’s articles of incorporation require shareholder approval of the merger by a two-thirds vote. Massachusetts and federal law will also require approval by various regulatory officials. Although Eastern has filed the necessary applications, the regulatory authorities will not begin their consideration until after shareholder approval. Because of changes in federal tax law presently scheduled to take effect at the end of this calendar year (absent Congressional action), delay in consummation of the merger may have substantial adverse tax consequences to shareholders.
DISCUSSION
Under the well-established test of Packaging Industries Group v. Cheney, 380 Mass. 609, 617 (1980), a preliminary injunction is warranted only when the moving party establishes both a likelihood of success on the merits of the claim, and a substantial risk of irreparable harm in the absence of an injunction. Although the moving party must show both elements, a strong showing on one may, in some circumstances, compensate for a relatively weak showing on the other. See id. (court evaluates moving party’s claim of injuiy and chance of success “in combination”); see also Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C.Cir. 1877) (substantial possibility of success suffices if injunction is necessary to prevent irreparable harm and no substantial risk of harm to opposing party). Once these elements are established, the Court must balance the threatened harm against the harm that an injunction will inflict on the opposing party. Where relevant, the Court should also consider any impact the grant or denial of an injunction may have on the public interest. See T&D Video, Inc. v. City of Revere, 423 Mass. 577, 580 (1996).
Here, the plaintiff claims likelihood of success on the merits of his allegation of breach of fiduciary duty in the failure to provide all material information in the proxy statement, particularly (although not exclusively) internal financial projections.[7] The plaintiff cites Delaware Chancery Court decisions finding particular proxy statements inadequate for lack of financial projections and certain other information. Having reviewed the cited decisions, the Court does not read them as applying some general rule of Delaware law that proxy statements relating to merger votes must always include financial projections.[8] To the contrary, the Delaware Supreme Court has explicitly rejected any such rule, Skeen v. Jo-Ann Stores, Inc., 750 A.2d 1170, 1174 (Del. 2000), along with the corresponding suggestion that “stockholders should be given all the financial data they would need if they were making an independent determination of fair value.” Id.
What is required is disclosure of information that is material to the decision the shareholders are called upon to make, so as to enable shareholders to evaluate the merits of the issue fairly. “Omitted facts are not material simply because they might be helpful. To be actionable, there must be a substantial likelihood that the undisclosed information would significantly alter the total mix of information already provided.” Id. Financial projections may be material in some instances, but their omission does not automatically render a proxy statement inadequate. Id.
Here, as described supra, the proxy statement provides substantial information about the process that led to the merger agreement, about Sandler O’Neill’s valuation analysis, and about the terms of the merger. In addition, during the three months since the merger was announced, shareholders and investment professionals have had the opportunity to draw on publicly available information about both the market generally and Wainwright in particular. The Court is not persuaded that, in these circumstances, the absence of financial projections, or any of the other information plaintiff contends should have been included, renders the proxy statement inadequate, such that the plaintiff would likely prevail on its claim of breach of fiduciary duty by omission of material information from the proxy statement.
The failure to establish a likelihood of success on the merits is fatal to the request for a preliminary injunction. Some discussion of irreparable harm, and the balance of harms, may be useful nonetheless. As to the element of irreparable harm, as the plaintiff points out, in the absence of an injunction, he will be called upon to exercise his right to vote without the information he considers necessary. That harm is in a sense irreparable, in that the opportunity for an informed vote, once past, cannot be revived. The facts presented, however, leave no doubt that the harm to all shareholders that would arise from an erroneously *511 issued injunction — delay potentially leading to adverse tax consequences — would be far greater.
CONCLUSION AND ORDER
For the reasons stated, the Plaintiffs request for preliminary injunction, as expressed in its Emergency Motion to Expedite Proceedings and to Set a Hearing on Plaintiffs Motion for a Preliminary Injunction in Advance of the September 29, 2010 Shareholder Vote, is DENIED.

 Counsel report that the parties have reached agreement regarding expedited discovery, so that no action is needed on the plaintiffs request in that regard.

 he Court was informed at argument that Wainwright has issued a revised proxy statement to correct a technical error, and has postponed the shareholder vote to October 18, 2010.

 The plaintiff filed his original complaint on July 2, 2010, four days after Wainwright announced the acquisition agreement, and some ten weeks before the issuance of any proxy statement. The claim at that time focused on alleged inadequacy of the purchase price.

 Presented with a sworn affidavit on one side, and an unverified complaint on the other, the Court takes the facts from the former. See Brookline v. Goldstein, 388 Mass. 443, 450 n.10 (1983).

 The opinion letter recites that Sandler O’Neill reviewed Wainwright’s internal financial projections, audited financial statements, and publicly available and other historical information.

 The proxy statement disclosed that Sandler O’Neill’s fee was in large part contingent on consummation of the merger.

 The plaintiffs memorandum includes a discussion of Delaware law regarding directors’ obligations to maximize shareholder value, but does not argue that the directors have failed to do so here. Whether the plaintiff has abandoned that claim, or merely defers it to a later stage of the case, recognizing its susceptibility to full remedy at law, is unclear. The plausibility of the claim would seem to be open to doubt, in light of the 98% premium, as well as the individual defendants’ collective ownership of a large majority of the stock, aligning their economic interests with those of the purported class.

 While citing almost exclusively Delaware cases, plaintiff acknowledges that Massachusetts law governs. Delaware cases may nevertheless have persuasive value to the extent that they are consistent with Massachusetts law. Plaintiff has not suggested that Massachusetts imposes any higher duty than Delaware on directors in circumstances such as these.