Felipe GONZALEZ, Odis F. Newsom, Marcos Hoffman, Peter Ralston, William R. Smith, William M. Wilkins, James L. Babin, Bish Sharma, Camilo Diaz, John N. Stanfield, John R. Dryer, David E. Blockus, Thomas A. Sneed, Robert S. Behringer, Olivier Mauvoisin, John Hines and Andy Taylor, Appellants

v.

UNIVERSALPEGASUS INTERNATIONAL, INC., Charles R. Gwirtsman, Charles A. Hamilton, Timothy J. Coughlon, Jerry W. Mayfield, Robert A. Deason, Richard Spears, Peter Robertson and Ted Nark, Appellees

NO. 14-16-00009-CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed August 24, 2017

Eugene B. Wilshire, Jr., Houston, TX, for Appellants.

Peter A. Stokes, Austin, Gerard G. Pecht, John Byron, Houston, TX, for Appellees.

Panel consists of Justices Christopher, Busby, and Wise.

## OPINION

Ken Wise, Justice

This case involves minority shareholders in a Delaware corporation who claim that the corporation and its board of directors sought to divest them of their shares through an attempted restructuring of the company. The minority shareholders appeal from a summary judgment against them on their claims of breach of contract, breach of fiduciary duty, and violations of the Texas Securities Act. We affirm.

### BACKGROUND AND PROCEDURAL HISTORY

Headquartered in Houston, appellee UniversalPegasus International, Inc. (UPI) is an international engineering company that provides survey, inspection, engineering, procurement, and construction services to companies in the energy industry. UPI was incorporated under the laws of Delaware on January 23, 2008, when its majority shareholder, KRG Capital Partners (KRG), and its co-investors acquired all of the outstanding capital shares of both Universal Ensco, Inc. and Pegasus International, Inc. Appellants are former and current employees of Pegasus International and UPI who hold varying amounts of UPI common stock and Series A-1 Preferred Shares totaling approximately 4.181% of UPI's equity.

According to UPI, it began experiencing financial difficulty in 2009 and 2010, which worsened throughout 2010, 2011, and 2012. This financial difficulty resulted from adverse market events, a slower-than-expected transition into the midstream shale business, lingering effects from the 2008-09 financial crisis and resulting recession, and employee retention issues.

In December 2010, at the behest of UPI's lenders, KRG and its co-investors put $20 million in capital into UPI. In return, a majority of UPI's stockholders approved a Second Amended and Restated Certificate of Incorporation (the Certificate of Incorporation) and provided KRG and its co-investors Series AA Preferred Shares that were senior to all other equity. The Certificate of Incorporation awarded holders of AA Preferred Shares dividend and liquidation preferences ahead of the dividend and redemption rights afforded the holders of A-1 Preferred Shares (such as Appellants). The Certificate of Incorporation also provided for mandatory notice to all A-1 Preferred shareholders in the event a proposed transaction would, if carried out, effectuate a "fundamental change" in UPI's capital structure or ownership.

In the summary judgment proceedings below, UPI and the individual appellees, who were members of UPI's board of directors during the relevant time frame (the Directors), offered evidence that the December 2010 restructuring did not lead to improved financial performance by UPI. Among other things, the Directors contended that UPI's deteriorating financial condition caused defaults to UPI's primary lenders.

UPI hired a restructuring firm, Houlihan Lokey, and began to evaluate financial

alternatives. In mid-2012, Houlihan Lokey presented several financial alternatives to the board of directors (the Board), including filing for bankruptcy. The Board considered the alternatives and determined that a "comprehensive restructuring transaction" was the best alternative because it "addressed UPI's unsustainable debt burden, ensured adequate liquidity for operational needs and minimized business disruptions." The terms of the restructuring were worked out over several weeks among key company stakeholders, including KRG, lenders, and subordinated lenders.

The restructuring closed on September 28, 2012. By written consent in lieu of a meeting, the majority shareholders of UPI accepted the Board's recommendation and approved a restructuring that would include the merger of UPI with a subsidiary of a new company called UniversalPegasus Holdings, Inc. (UPI Holdings). UPI Holdings was owned by a number of stakeholders, including a combination of holders of $109.2 million in subordinated notes who agreed to cancel their debt in return for a 30% stake in the new company; certain senior debtholders who received a warrant for a 10% share in exchange for refinancing and restructuring a credit agreement; and KRG and its co-investors in UPI, who put $15 million into UPI Holdings in exchange for equity in the company. Ultimately, as of the date of the restructuring, 60% of the issued and outstanding equity of UPI Holdings was owned by UPI's former and current lenders.

The majority shareholders also agreed that UPI would amend its certificate of incorporation to effectuate the transaction. The Certificate of Amendment to the Certificate of Incorporation (the Merger Amendment) provided that the transactions contemplated by the merger agreement would not cause a redemption or otherwise give rise to any obligation or right to redeem any shares of Series AA Preferred Stock or Series A-1 Preferred Stock; UPI would not be required to comply with its obligation to send notice of a fundamental change; and all of the shares of stock in UPI were immediately cancelled and converted into a right to receive the "merger consideration" provided for in the merger agreement, "without any further action by the holder of such shares."

As a result of the merger between UPI and the subsidiary of UPI Holdings, UPI emerged as the surviving company with UPI Holdings its sole shareholder. Under the merger agreement, all of UPI's shareholders, including KRG and Appellants, were given the right to receive a cash payment of $.01 for each share of stock they owned, or the option to seek an appraisal of the fair value of their shares in a Delaware Chancery Court. To receive the $.01 per share payment, the shareholders were required to sign a Letter of Transmittal containing a broad release of UPI and the Directors.

UPI filed a certificate of merger with the Delaware Secretary of State memorializing the transaction and amending UPI's certificate of incorporation. UPI also adopted a Third Amended and Restated Certificate of Incorporation and operated as a wholly owned subsidiary of UPI Holdings. The third amended certificate did not allow for redemption or dividend payments.

A consequence of the restructuring was that Appellants were not given fifteen days' notice of the merger. Shortly before the completion of the merger, however, on September 10, 2012, UPI's chief executive officer, Philip Luna, provided a positive assessment of UPI's performance to its shareholders. Along with providing UPI's second quarter financial statements, Luna stated:

Note that our 2nd Quarter 2012 performance has improved over 1st Quarter 2012 (see page 6 of the attached financial package). Our revenues continue to trend up as a result of our improving backlog and sales prospects. We have reduced our selling, general and administrative expenses run rate to be in line with our business. The combination should drive continued improvement for the 3rd quarter.

A few days after the merger, on October 5, 2012, Luna forwarded the stockholders an Information Statement and Notice of Appraisal notifying Appellants of the restructuring. In that document, Luna stated that based on an independent valuation report by Stout, Risius & Ross, the Board had concluded that UPI had "no equity value." The Information Statement provided an overview of the company, the restructuring transaction, the amendment of the certificate of incorporation, the merger agreement, appraisal rights, and the opportunity for accredited investors to purchase shares in UPI Holdings. The Information Statement also included contact information for shareholders who had questions or required further assistance. Annexed to the Information Statement were copies of numerous merger-related documents, including the executed merger agreement, the Merger Amendment, and the Letter of Transmittal.

All Appellants received the Information Statement. None of them requested additional information about the merger, sought an appraisal of their shares, or attempted to invest in UPI Holdings.

From October 2012 through the beginning of 2014, UPI's financial statements reported that it continued to lose money. In May 2014, Huntington Ingalls Industries (Huntington Ingalls) acquired all the shares of UPI Holdings. The Huntington Ingalls transaction netted $97.1 million for UPI Holdings' shareholders. Nevertheless, KRG recouped less than 25% of its investment in UPI and UPI Holdings, and the subordinated lenders received less than 30% of the value of the loans they forgave in 2012 in exchange for their equity position in UPI Holdings.

Appellants subsequently filed this lawsuit, in which they assert three claims. In their primary claim, Appellants alleged that due to UPI's failure to comply with its obligations under the Certificate of Incorporation in connection with the merger agreement, the cancellation of Appellants' shareholdings was invalid. Within that claim, Appellants alleged that the Huntington Ingalls purchase was a fundamental change triggering Appellants' right to have their accumulated dividends paid and their A-1 Preferred Shares redeemed. Alternatively, Appellants alleged that if not entitled to dividends and redemption, they were entitled to a judgment to the effect that they were still shareholders. Appellants also alleged in the alternative that UPI and the Directors breached fiduciary duties and violated the Texas Securities Act.

UPI and the Directors filed a motion for summary judgment challenging each of Appellants' claims on both traditional and no-evidence grounds. Appellants filed a response, and UPI and the Directors filed a reply. Both sides also filed objections to the others' evidence. On December 22, 2015, the trial court signed a final judgment granting UPI and the Directors' motion for summary judgment. By a separate order, the trial court granted UPI and the Directors' objections to Appellants' evidence and ruled that the testimony of Appellants' experts was not relevant because "they do not measure the damages, if any, that are available under rescission."

## ISSUES AND ANALYSIS

On appeal, Appellants raise five issues challenging the trial court's grant of final summary judgment in favor of UPI and the Directors. Appellants contend that the trial court erred by (1) holding that the September 28, 2012 restructuring was valid as to Appellants; (2) holding that the Directors did not breach their fiduciary duty to Appellants; (3) holding that the Directors completely disclosed all material facts bearing on an intelligent decision to accept the merger consideration or to seek judicial appraisal; (4) striking Appellants' expert evidence of damages; and (5) impliedly determining that Appellants had no claim for the redemption of their Series A-1 Preferred Shares due to failure of conditions when Appellants presented evidence that the conditions were waived. Appellants discuss their issues within the context of each claim, so we will likewise address whether the trial court erred in granting summary judgment on Appellants claims of breach of the Certificate of Incorporation, breach of fiduciary duty, and violations of the Texas Securities Act.

### Standards of Review

We review de novo the trial court's grant of a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In reviewing either a traditional or no-evidence summary judgment motion, we must take as true all evidence favorable to the non-movant and draw every reasonable inference and resolve all doubts in favor of the non-movant. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam); *Mendoza v. Fiesta Mart, Inc.*, 276 S.W.3d 653, 655 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

In a traditional motion for summary judgment, the movant must establish that no genuine issue of material fact exists and the movant is thus entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). If the movant's motion and evidence facially establish its right to judgment as a matter of law, the burden shifts to the non-movant to raise a genuine issue of material fact sufficient to defeat summary judgment. *Willrich*, 28 S.W.3d at 23.

After an adequate time for discovery, a party may move for no-evidence summary judgment if no evidence exists of one or more essential elements of a claim or defense on which the adverse party bears the burden of proof at trial. Tex. R. Civ. P. 166a(i). The trial court must grant a no-evidence summary judgment motion unless the non-movant produces competent summary judgment evidence that raises a genuine issue of material fact on each element specified in the motion. *Id.*; *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

To determine if the non-movant raises a fact issue, we review the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *Fielding*, 289 S.W.3d at 848. A no-evidence challenge will be sustained when: (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

### I. Breach of the Certificate of Incorporation

██ The Appellants first claim that the attempted restructuring did not validly

cancel their shares of UPI stock. Appellants maintain that at the time of the merger, UPI was still governed by the Certificate of Incorporation, which provided that in the event of a fundamental change, Appellants were entitled to 15 days' notice of the fundamental change, as well as certain dividend and liquidation rights as holders of A-1 Preferred Shares. According to Appellants, the merger with UPI Holdings and the subsequent Huntington Ingalls acquisition constituted fundamental changes triggering those rights, but Appellants did not receive them. Consequently, Appellants contend, the purported cancellation of their shares was invalid. Based on their experts' calculations, Appellants claim that the dividends and liquidation payments owed to them range between $16.4 and $21 million. Alternatively, Appellants claim that they are entitled to be reinstated as shareholders in UPI.

UPI and the Directors respond that the notice and payment provisions on which Appellants rely were amended out of existence when UPI adopted the Merger Amendment, which cancelled all of Appellants' shares, eliminated the notice provisions, and provided that no redemption or other payments would be triggered by the restructuring. The evidence shows that the Merger Amendment was properly adopted in accordance with Sections 242 and 228 of the Delaware General Corporation Law by the written consent of the majority of UPI's stockholders. *See* Del. Code tit. 8, § 242(a) (providing that a corporation may amend its certificate of incorporation to cancel stock or rights of stockholders to receive dividends); *id.* § 228(a) (providing for consent of stockholders or members in lieu of a meeting of the corporation's stockholders "without prior notice and

without a vote"); *see also Solomon v. Armstrong*, 747 A.2d 1098, 1132–33 (Del. Ch. 1999) (dismissing contract claim based on failure to award exchange rate under certificate of incorporation when it was amended so as to avoid payment of exchange rate). Further, UPI then adopted the Third Amended and Restated Certificate of Incorporation, which likewise omitted the notice and payment provisions that form the basis for the Appellants' claims.

Appellants do not dispute that UPI's majority shareholders had the right to amend the Certificate of Incorporation without their consent. *See Rothschild Int'l Corp. v. Liggett Grp. Inc.*, 474 A.2d 133, 136–37 (Del. 1984) ("It is equally settled under Delaware law that minority stock interests may be eliminated by merger. And, where a merger of corporations is permitted by law, a shareholder's preferential rights are subject to defeasance. Stockholders are charged with knowledge of this possibility at the time they acquire their shares.").[1] Although Appellants insist that as of September 28, 2012, the affairs of UPI were still governed by the Certificate of Incorporation, they cite no authority to support this contention, and we have found none.

Appellants also argue that because the Huntington Ingalls acquisition was a fundamental change and the AA Preferred shareholders "waived" their preferential redemption rights, Appellants are entitled to payment of the dividends and liquidation payments they would be due under the Certificate of Incorporation for their A-1 Preferred shares. Appellants' argument fails, however, because it rests on the unsupported premise that the cancellation of Appellants' shares was invalid.

1. Appellant Felipe Gonzalez testified that he understood that the Certificate of Incorporation could be amended by a majority vote of the shareholders. He also acknowledged the risk as a shareholder that he could lose his entire investment in UPI.

Even assuming that Appellants were entitled to receive notice or exercise their redemption rights, because any evidence of damages was struck (as discussed below), Appellants failed to defeat the no-evidence portion of UPI and the Directors' motion as to damages for this breach of contract claim. In addition, Appellants fail to cite any case (or provision of the Certificate of Incorporation) supporting the argument that the violations they allege would entitle Appellants to the relief they seek, and we decline to so hold.

Finally, Appellants complain that the Merger Amendment was procedurally defective because Delaware law requires that a certificate of amendment approved by written consent include a statement that "written consent of a majority of the stockholders of each constituent corporation entitled to vote and approve the Merger Agreement has been given in accordance with Section 228 of the [Delaware General Corporation Law]." *See* Del. Code tit. 8, § 228(e).[2] Appellants cite *Turner v. Bernstein* as support for this proposition, but in *Turner* the court merely assumed without deciding that Section 228 would apply to a certificate of merger, not a document like the Merger Amendment. *See* No. 16190, 1999 WL 66532, at *9 (Del. Ch. Feb. 9, 1999). In this case, the Certificate of Merger includes the exact language Appellants recite. And, in any event, the Merger Amendment also states that "[t]his Certificate of Amendment to the Second Amended and Restated Certificate of Incorporation of the Corporation was duly adopted

in accordance with Sections 242 and 228 of the General Corporation Law of the State of Delaware." On this record, we cannot conclude that the Merger Amendment was ineffective to amend the Certificate of Incorporation.

UPI and the Directors have presented evidence that the majority shareholders validly approved the amendment to the Certificate of Incorporation, and Appellants have cited no authority for their contention that the cancellation of their shares was invalid as a result of any alleged violation of their right to receive 15 days' notice or to redeem their Series A-1 Preferred shares. Additionally, Appellants have failed to present evidence raising a genuine issue of material fact that they were damaged by the alleged violations to support their claim that UPI and the Directors breached of the Certificate of Incorporation. Consequently, Appellants are not entitled to either dividends and liquidation payments or recognition that they remain as shareholders in UPI. We overrule Appellants' first issue.

## II. Breach of Fiduciary Duties by the Directors

In the alternative, Appellants contend that genuine issues of fact exist that the Directors breached their fiduciary duty to provide complete and accurate information to Appellants to enable them to make an informed decision as to whether to accept the offered merger consideration or to seek judicial appraisal.[3] According to Ap-

**2.** Although Appellants cite to subsection (f), Section 228 does not have a subsection (f), therefore, we presume Appellants intended to cite to subsection (e). Section 228(e) provides, in relevant part:

In the event that the action which is consented to is such as would have required the filing of a certificate under any other section of this title, if such action had

been voted on by stockholders or by members at a meeting thereof, the certificate filed under such other section shall state, in lieu of any statement required by such section concerning any vote of stockholders or members, that written consent has been given in accordance with this section.

**3.** Appellants alleged in their petition that both UPI and the Directors breached fiduciary

pellants, if the Directors are found to have breached their fiduciary duties, Appellants are entitled to rescissory damages, measured by the difference between the $.01 per share price offered as part of the merger and the price per share paid at the later acquisition by Huntington Ingalls.

Appellants argue that they presented evidence that the Directors breached their fiduciary duties in numerous ways. First and foremost, Appellants contend that the Information Statement provided to the shareholders omitted material information describing how the merger consideration was derived, because the consideration was illegally tied to a release of all of the Directors. Next, Appellants assert that the Directors failed to set the merger consideration at an appropriate amount. Lastly, Appellants contend that the Information Statement contained material misrepresentations and omissions. We address each argument in turn.

### A. Requiring a Release in Exchange for the Merger Consideration

■ Appellants' primary contention in support of their fiduciary duty claim is that the Directors materially breached their duty by attempting to tie merger consideration to a release for themselves. According to Appellants, the Directors are required by law to disclose how the merger consideration was derived, and because they also required a release, it is impossible to determine how the consideration of $.01 was determined. In support of their claims, Appellants cite *Berger v. Pubco Corp.*, 976 A.2d 132 (Del. 2009), and *Cigna Health & Life Insurance Co. v. Audax*

*Health Solutions, Inc.*, 107 A.3d 1082 (Del. Ch. 2014). These cases are distinguishable and do not support Appellants' argument.

In *Cigna*, the court addressed the contents of a merger agreement and held that because the merger agreement referenced a letter of transmittal but did not mention that shareholders were obligated to agree to a release before receiving their shares, the release obligation lacked consideration and was unenforceable. *See* 107 A.3d at 1091. The *Berger* case primarily involved the appropriate remedy for material violations of the notice to minority shareholders in a private corporation that their shares were being cashed out involuntarily. *See* 976 at 133–34. The violations at issue in *Berger* included the failure to disclose any information concerning how the share price was determined. *Id.* at 136. The Court of Chancery determined, and it was not disputed on appeal, that information about the method used to set the price could be material to a shareholder's decision whether to accept the price or seek an appraisal. *See id.* The court noted, however, that the director was not required to "provide[ ] picayune details about the process he used to set the price; it simply means he should have disclosed in a broad sense what the process was." *Id.*

In contrast to *Cigna*, the UPI merger agreement specifies that shareholders must execute and deliver the incorporated Letter of Transmittal (containing the release language) with their stock certificates in exchange for the stated amount of the merger consideration.[4] Likewise, the

---

duties. To the extent Appellants contend that UPI owed them fiduciary duties, summary judgment was proper because a corporate entity does not owe fiduciary duties to its shareholders. *See In re Orchard Enters., Inc. S'holders Litig.*, 88 A.3d 1, 54 (Del. Ch. 2014).

4. "Letter of Transmittal" is defined in Section 1.01 of the merger agreement as the "letter of transmittal in substantially the form attached hereto as Exhibit 1.01(b)." The Letter of Transmittal attached as Exhibit 1.01(b) includes the release language and emphasis in bold lettering that the shareholder must execute and return the Letter of Transmittal to

Information Statement explains that shareholders must submit their stock certificates with a signed letter of transmittal to receive their merger consideration, and copies of the merger agreement and the Letter of Transmittal were attached.

And, unlike the deficient notice in *Berger*, the Information Statement discloses that the Board determined that UPI had no equity value based on a valuation of the company's enterprise value by Stout, Risius & Ross. Additionally, shareholders were informed that UPI owed $156.8 million more than the entire company was worth, had defaulted on $218.8 million in outstanding debt, could not make principal or interest payments, had no other source of capital, and would run out of funds within weeks if it did not restructure. Thus, the Information Statement informed the shareholders of the method by which the shares were valued and provided the underlying financial considerations taken into account in determining the merger consideration. Appellants themselves acknowledge that the Information Statement "painted a picture of UPI so bleak that no sensible investor would have put further money into the company."

We conclude that the Directors demonstrated that the release requirement and the methodology used to determine the merger consideration were adequately disclosed, and Appellants have presented no evidence raising genuine issues of material fact to the contrary.

## B. Amount of the Merger Consideration

Next, Appellants contend that the Directors failed to set the merger consideration at an appropriate amount. Appellants complain that while they were offered a total of just over $9,000.00 for their shares, some twenty months after the restructuring the total equity of UPI was sold to Huntington Ingalls for over $90 million, after payment of all outstanding UPI debt. Appellants point to the opinion of their business valuation expert, Hill Schwartz Spilker Keller, LLC (HSSK)—which was stricken by the trial court—that based on the value of UPI Holdings after its purchase by Huntington Ingalls in May 2014, Appellants' stock as of September 28, 2012 would have been worth over $1,356,000.00. Thus, Appellants assert, the summary judgment evidence demonstrates a genuine issue of fact exists as to whether the Directors discharged their duty to see that Appellants received an offer of fair merger consideration.

Marc Schwartz of HSSK testified for Appellants.[5] The crux of Schwartz's opinion was the assumption that the restructuring of UPI would have occurred without regard to whether Appellants' equity in UPI was cancelled. Schwartz opined that KRG and its co-investors "had no reasonable choice other than to inject an additional $15,000,000 into UPI" because without this cash injection, they would have lost their investment. Similarly, Schwartz opined, the subordinated lenders had "no viable option" other than to convert their debt to equity, because otherwise the lenders "would have lost 100% of their debt."

receive the merger consideration. The merger agreement also specifies the amount of the "Merger Consideration" for each class of shares in Section 2.02, and in Section 2.03, the merger agreement explains that "[t]he Surviving Corporation [UPI] shall pay each Stockholder who has surrendered his, her or its certificates of Stock ... together with a

duly executed Letter of Transmittal delivered to [UPI], the amount of cash to which he, she or it is entitled under Section 2.02(a) and Section 2.02(b)."

5.  Schwartz, a principal in HSSK, is certified in public accounting, fraud examination, and financial forensics.

In ·effect, Schwartz assumed that UPI's lenders would have agreed to the restructuring even if UPI's directors had insisted that Appellants' minority ·interest be "rolled over" without any requirement that they contribute additional equity. But, Schwartz admitted that HSSK was ·"asked to assume" by Appellants' counsel that the lenders would have done the restructuring while letting Appellants .keep their equity and that he "ha[d] no other basis for making that assumption." Schwartz also acknowledged that this assumption was "pure supposition." There .was no evidence that the lenders actually agreed to allow the minority shareholders' equity to roll over, and the undisputed testimony is that they did not.[6] Schwartz's speculative testimony is unreliable and therefore is not evidence. *Gharda USA, Inc.· v. Control Sols., Inc.;* 464 S.W.3d 338, 350-51 (Tex. 2015) (explaining that an expert opinion is unreliable when it assumes a fact the expert is unable to determine); *Volkswagen of Am., Inc. v. Ramirez,* 159 S.W.3d 897, 904 (Tex. 2004) (stating that expert testimony is not reliable if it is grounded in "unsupported speculation"). ·To the extent that Appellants are claiming that the Directors had an obligation to preserve ˄Appellants' minority interest even while all other shareholders lost their rights, the Directors had no duty to obtain special privileges for Appellants. *See In re CompuCom Sys., Inc. S'holders Litig.,* No. Civ. A. 449-N, 2005 WL 2481325, at ·*7 n.37 (Del. Ch. Sept.·29, 2005) ("This claim, that the minority shareholders were entitled to more per share consideration than. Safeguard, the controlling shareholder, is not supported by Delaware law.").

Appellants' argument ·that the share price was not "fair" is similarly unsupported. Appellants admit that the Huntington Ingalls purchase netted only $97.1 million for UPI Holdings' shareholders, an amount less than the $109.2 million in subordinated debt that UPI owed at the· time of the restructuring. . Schwartz acknowledged that in September 2012, before the restructuring, UPI's shares had no value, and that both the shareholders and UPI's creditors would have been "goose-egged" if UPI did not restructure. Schwartz also admitted that using the 2014 acquisition of post-restructured UPI Holdings was not an accepted methodology for determining damages in 2012. HSSK's opinion as to share price is neither relevant nor reliable, and the trial court did not abuse its discretion by striking it. *See Ramirez,* .159 S.W.3d at 904-05. .

In summary, the evidence shows that Stout, Risius & Ross, an independent valuation firm hired by the Board, concluded that "the Company's equity has no intrinsic value" since "the value of the Company's interest-bearing debt exceeds the range of Enterprise Value." UPI's Board thus concluded that the stock had no value, as UPI was about to go under. Appellants and their experts admitted that · UPI's stock was worthless before the restructuring, and the· experts' opinion of the value of Appellants' shares was properly· stricken. Appellants have failed to present evidence raising a genuine issue· of material fact that the Directors breached their fiduciary duty by not setting the merger. consideration at a fair price.

6. For example, Director Gwirtsman testified without contradiction that "KRG proposed that UPI's existing equity be rolled over in the proposed restructuring, such that UPI's stockholders would receive some modest percentage of the securities in the restructured entity without having to contribute additional money. The lenders, however, rejected this proposal and insisted that holders of existing equity would have to invest new capital to receive any stock in the new company."

## C. Alleged Misrepresentations and Omissions in the Information Statement

Finally, Appellants contend that that the Information Statement contained numerous misrepresentations and omissions. Specifically, Appellants argue that the Directors misrepresented: (1) that the merger consideration required execution of a release and the waiver of appraisal rights; (2) that the equity of UPI in September 2012 was zero when the later acquisition by Huntington Ingalls demonstrated that the company had significant value; and (3) that all shares had been cancelled, when shares for which appraisal was demanded were not cancelled. Appellants also argue that the Directors made numerous material omissions. According to Appellants, the Directors failed to disclose: (1) that the report by Stout, Risius & Ross on which the Board relied was a draft report; (2) the methodology used to set the merger consideration; (3) conflicts of interest between the Directors and the minority shareholders; and (4) the most recent UPI financial statements.

■ Of the asserted misstatements, we have already addressed the first two concerning the equity value and the release requirement. Appellants do not explain their remaining assertion that the Information Statement falsely asserts that all shares were cancelled when they were not, but this complaint appears to be based on a reading of a snippet of the Information Statement in isolation suggesting that the shares held by shareholders who demand an appraisal and shares of capital stock are not cancelled. But the Information Statement plainly provides that upon completion of the merger each outstanding share is "cancelled and converted automatically" into the right to receive the merger consideration or demand appraisal. The merger agreement reflects the same information. The trial court did not err by concluding that any misrepresentation based on the complained-of language is not material as a matter of law. *See In re Best Lock Corp. S'holder Litig.*, 845 A.2d 1057, 1071 (De. Ch. 2001) (holding that isolated misstatement contradicted by information statement when read as a whole was not material).

■ We turn next to Appellants' complaint that the Directors failed to disclose that the Stout, Risius & Ross report was a draft rather than a final report. In a merger approved by the majority stockholders where the minority stockholders have no right to vote on the transaction itself, directors need only provide the minority stockholders with the material information necessary to decide whether to accept the merger consideration or seek appraisal. *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1174 (Del. 2000). "Omitted facts are not material simply because they might be helpful." *Id.* Instead, there must be "a substantial likelihood that the undisclosed information would significantly alter the total mix of information already provided." *Id.; accord Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985) (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)).

■ Appellants do not explain how the fact that the Stout, Risius & Ross report was a draft rather than a final report would have been material to a reasonable stockholder. The Information Statement reflected that the Board relied on that report to provide a valuation of UPI's enterprise value, and the author of the report testified without contradiction that the report reflected Stout, Risius & Ross's final valuation opinion.

As previously discussed, the Board's reliance on the Stout, Risius & Ross report also provides information concerning the methodology used to set the merger con-

sideration. The Information Statement also included considerable evidence that would cause a reasonable shareholder to conclude that the shares were valueless based on UPI's undisputed financial condition. Given the information provided, Appellants do not explain why the failure to provide the most recent UPI financial statements was material. On this record, we hold that the trial court did not err in concluding that these alleged omissions would not significantly alter the total mix of information already provided to enable a reasonable shareholder to decide whether to accept the merger consideration or seek an appraisal. *See Skeen*, 750 A.2d at 1174; *Rosenblatt*, 493 A.2d at 944.

■■■ Lastly, we are not persuaded by Appellants' complaint that the Directors failed to disclose alleged conflicts of interest. Appellants suggest that the Directors appointed by KRG had a conflict because KRG was a large shareholder and that the release created a conflict.[7] But Delaware law is clear that there is no conflict when a large shareholder is treated the same as everyone else and receives the same payment as other shareholders. *See In re CompuCom Sys., Inc. S'holders Litig.*, No. Civ. A. 499-N, 2005 WL 2481325, at *6 (Del. Ch. Sept. 29, 2005) ("[A]s the owner of a majority share, the controlling shareholder's interest in maximizing value is directly aligned with that of the minority."). The undisputed testimony was that

the interests of all shareholders were aligned, and every stockholder received the same amount per share and the right to seek an appraisal. Thus, as a result of the restructuring, KRG lost its entire investment in UPI just as did all other investors. And, as discussed above, the Information Statement and the merger agreement disclosed the exchange of the release for the merger consideration, and Appellants cite no authority for the proposition that the existence of the disclosed release alone creates a conflict.

We hold that the trial court did not err by concluding that Appellants failed to raise a fact issue precluding summary judgment in favor of UPI and the Directors on Appellants' breach of fiduciary duty claims.[8]

### III. The Texas Securities Act Claim

Alternatively, Appellants contend that in the event their shares were validly cancelled, UPI and the Directors violated Article 581-33(B) of the Texas Securities Act by offering to purchase Appellants' stock at far less than its true value by making false and misleading misrepresentations and omissions concerning its value.

■■■ Article 58-33(B) provides in relevant part:

A person who offers to buy or buys a security (whether or not the security or transaction is exempt under Section 5 or

---

7. Appellants also complain that Phillip Luna signed the merger agreement for all three entities—UPI, UPI Holdings, and the merger subsidiary—in his capacity as chief executive officer and president. Appellants assert that some explanation was required for "why Luna was on all sides of the transaction." But Appellants do explain how this fact is relevant or material.

8. The parties disagree as to which of them bore the burden of proof on the fiduciary duty claims. Appellants contend that the Directors

had the burden to prove that the transaction was fair and, consequently, the Directors were not entitled to a no-evidence summary judgment on the Appellants' fiduciary duty claims. We have reviewed the motion and conclude that it challenges these claims on both traditional and no-evidence summary judgment grounds. Assuming without deciding that the Directors had the burden of proof, the Directors have presented uncontroverted summary judgment evidence that they did not breach any duty owed to Appellants.

6 of this Act) by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, is liable to the person selling the security to him, who may sue either at law or in equity for rescission or for damages if the buyer no longer owns the security. Tex. Civ. Stat. Art. 581-33(B). The terms "offer to buy" or "buy" have been broadly defined to "include every acquisition of, or attempt to acquire, a security for value." *1993 GF P'ship v. Simmons & Co. Int'l*, No. 14-09-00268-CV, 2010 WL 4514277, at *7 (Tex. App.—Houston [14th Dist.] Nov. 9, 2010, no pet.) (mem. op.) (quoting *Pitman v. Lightfoot*, 937 S.W.2d 496, 531 (Tex. App.—San Antonio 1996, writ denied)). Nevertheless, alleged omissions and misrepresentation that occur only after the sale cannot be the means by which a person offers to buy or buys the security. *Id.*

Appellants argue that the Information Statement represented that the purchase of their shares would be accomplished by a "two-step" process. The first step was to either accept the "offer" of $.01 per share or elect to seek a judicial appraisal of the value of their shares by October 25, 2012. Shareholders were also informed that to invoke their appraisal rights, they must be a shareholder of record "through the effective time of the merger," which was September 28, 2012. According to Appellants, the second step occurred when the October 25 appraisal deadline came and went without any of the Appellants choosing the appraisal process. Appellants posit that although there is language in the Information Statement to the effect that the merger itself cancelled all of their shares immediately, this was not in fact the case, because the shares could not be cancelled until appraisal rights were demanded or the period for an appraisal demand elapsed, and therefore an "offer" to purchase their share was outstanding until the right to seek an appraisal expired.

Appellants also assert that during the purported offer period, UPI and the Directors made the misrepresentations and omissions discussed in the previous section for the purpose of misleading Appellants about the true value of their shares. Appellants also point to Philip Luna's September 10, 2012 "happy talk" letter as "misleading and at odds with the Information Statement," which they contend was designed to "encourage Appellants to accept the $.01 merger consideration." Appellants rely on their experts' damages calculations as evidence that the shares were worth considerably more based on the later acquisition of UPI Holdings by Huntington Ingalls.

Assuming that the right to receive the merger consideration and the alternative right to seek and appraisal constituted an offer for purposes of the Texas Securities Act, we have already determined that Appellants presented no evidence of material misstatements or omissions. Further, Appellants have no admissible evidence of damages. On this record, we conclude that the trial court did not err by granting summary judgment on Appellants' Texas Securities Act claim.

## Conclusion

We overrule Appellants' issues and affirm the trial court's judgment.